IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| STATE OF TENNESSEE <br> DEPARTMENT OF CHILDREN'S SERVICES <br>     Petitioner/Counter-Defendant <br> <br> v. <br> <br> LAURA WALLCE TRIPPE, JESSE TRIPPE, <br>     RESPONDENTS, and <br> v. <br> <br> SHAUN LEE WINESBURGH, <br>     RESPONDENT/COUNTER- <br>     PLAINTIFF | CASE NO. 1:14-CV-153 |

**MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER**

Shaun Winesburgh ("Father"), by and through counsel, pursuant to F.R.C.P., Rule 7(b), F.R.C.P. Rule 60, and E.D.TN.L.R. 7.1, hereby respectfully lodges this Memorandum in Support of Motion to Reconsider. On July 29, 2014, this Honorable Court entered an Order remanding this moves this Court to reconsider the Order entered on July 29, 2014 remanding Father's Removal of Americans with Disabilities Act ("ADA") claims to state court as set forth herein.

There are at least three (3) reasons Father's Removal must remain before this Honorable Court. This Honorable Court must reconsider its Order Remanding this matter to Hamilton County Juvenile Court as "there is a need to correct a clear error or prevent manifest injustice." *Rodriquez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App. 949, 959 (6th Cir. 2004). In this matter, there are 3 clear errors. The law has been misapplied. The ADA is a civil rights act and therefore applicable under 28 U.S.C. §1443 conferring original jurisdiction in this Honorable Court as Title II ADA rights cannot be addressed by a state court and Tennessee has

no comparable Title II provision. Likewise, Jesse Trippe is a non-factor as he is not, by court order, the father of the child. Tennessee law is clear, having failed to legitimate the child, Jesse Trippe has no standing and as such is inappropriately labeled a 'defendant'.

More specifically, this Honorable Court should reconsider the remand because first, Jesse Trippe is not the legal father of these minor children and has no standing. As a result, he is not a defendant nor is his consent required.

Second, jurisdiction lies with this Honorable Court as 28 U.S.C. §1443 is a mechanism through which a defendant may remove a state action when unable to have his federal civil rights claims addressed in state court. Moreover, the ADA is a civil rights act. 42 U.S.C. §12101(a)(3), (4), (5), (7), and (9). Father has ADA claims for discrimination in the provision of public services by failing to accommodate which cannot be addressed in state court either by the juvenile court or by Tennessee's version of the ADA codified at T.C.A. §4-21-101 et seq. There is no comparable provision within Tennessee's version of the ADA which addresses accommodation for the provision of public services, Father cannot have his day in court on those issues.[1] Father's removal is proper and must be **REINSTATED.**

The State of Tennessee would have this Honorable Court believe that Father seeks adjudication of the termination issues in Federal Court and nothing is further from the truth. Father merely seeks a determination as to whether the State of Tennessee must avoid discriminating against the disabled during and throughout the removal process, reunification process, and potentially, the termination of parental rights process. 42 U.S.C. §12135 – 12165. DCS has the legal duty and obligation to refrain from discriminatory conduct. *Id*. Only this Court

---

[1] T.C.A. §4-21-501 addresses public accommodation discrimination for the mentally disabled. That civil right is not Father's concern. Rather his concern is as stated in Title II of the ADA 42 U.S.C. §§12131 - 12165 (prohibiting disability discrimination *by all public entities* at the local (i.e. school district, municipal, city, county) and *state level*. Public entities must comply with Title II regulations by the U.S. Department of Justice. These regulations *cover access to all programs and services* offered by the entity.). **Access includes** physical access described in the ADA Standards for Accessible Design and **programmatic access that might be obstructed by discriminatory policies or procedures** of the entity.). There is no such provision within Tennessee's Human Rights Act at T.C.A. §4-21-501.

is privileged to hear the civil rights claims at issue and the proof. Thus, Father's removal is proper and must be **REINSTATED**.

Finally, counterclaims are permissible – *particularly when the rights alleged to have been denied cannot be addressed by the state court action. Conrad v. Robinson*, 871 F.2d 612 (6th Cir. Ct. App. 1989)(in employment case, counter-claims brought by defendant were found to be properly removed to protect civil rights against retaliation). Sixth Circuit precedent confirms that where rights cannot be addresses in a state court action, the United States District Court of the district in which the matter is pending has original jurisdiction of the claims asserted through counter-claim. *Id.* Here, Father's Title II civil rights under the ADA cannot be addressed by the state court or through the adjudication of any comparable Tennessee statute as none exists. Thus, Father's removal is proper and must be **REINSTATED**.

## ARGMENT

### I.  Jesse Trippe has no standing and consent for removal not required.

First, Jesse Trippe is not the legal father of either of the children subject to this lawsuit. Father is Shaun Winesburgh having been legitimated by Order of the Juvenile Court on October 24, 2013.  As a result of that Order, Jesse Trippe has no legal standing to assert any rights as to the minor children at issue. *See, State ex rel. Chilar v. Crawford, 39 S.W.3d 172 (Tenn. 2000).* Indeed, "[t]he Tennessee Supreme Court has held that a biological father of a non-marital child who has developed a substantial relationship with the child has a fundamental liberty interest entitled to due process protection. *See Petrosky v. Keene*, 898 S.W.2d 726, 728 (Tenn. 1995); *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994). This court has also held that the biological father of a non- marital child who has attempted in good faith to establish a relationship with his child has a right to attempt to create a legally recognized parent-child relationship. *See In re Hood*, 930 S.W.2d 575, 578-79 (Tenn. Ct. App. 1996). As a result of these decisions, the parental rights of biological fathers of non-marital children are entitled to the same

constitutional protection as the rights of married parents and divorced custodial parents, as long as the biological father has established a substantial relationship with the child." *Id. at 182.*

Accordingly, Jesse Trippe need not participate or consent to removal. He is not truly a defendant; rather, he is not a party participant as Shaun Winesburgh has been judicially determined to be Father. *Coyle v. Ericson*, 2011 Tenn. App. LEXIS 453 (2011); and *see Pressley v. Pressley*, 1995 Tenn. App. LEXIS 77, 1995 WL 54490 (Tenn. Ct. App. Feb. 10, 1995) (when the father acknowledges paternity in some manner, as Mr. Matheny did here in his divorce papers, then this fact bolsters the child's status as a legitimate child, but where a husband marries a woman knowing she is pregnant with the child of another man, and the fact is stipulated in the parties' divorce and the husband never acknowledges paternity, we have held that it was error for the trial court to order the husband to pay child support); *and see also State ex rel. Hickman v. Dodd*, 2008 Tenn. App. LEXIS 699, 2008 WL 4963508 (Tenn. Ct. App. Nov. 21, 2008)(where a man signs a voluntary acknowledgment of paternity, he cannot automatically rescind it and be relieved of his child support obligation to the child when DNA tests later show that he is not the biological father. That is where the man acknowledged the paternity of a child born before his marriage to the mother, and then agreed that the child was his in their divorce and was ordered to pay child support; recognizing that a "man who voluntarily has legitimated a child has declared that he is the child's natural father").

Consequently, the State of Tennessee Department of Children's Services designation of Jesse Trippe as a defendant notwithstanding, Trippe has no standing with respect to these minor children. As a result, this Honorable Court must **REINSTATE** the Removal.

**II.   Civil Rights as defined by 28 U.S.C. §1443 includes civil rights established pursuant to the ADA and are not civil rights confined to 'race'.**

Second, Father seeks to have his civil rights adjudicated. Those civil rights are defined by statute at 28 U.S.C. §1443. Specifically, 28 U.S.C. §1443 provides that civil actions may be removed by a defendant "[*a*]*gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens* of the United States, or of all persons within the jurisdiction thereof;".

Nowhere in 28 U.S.C. §1443 is there a requirement that the civil rights alleged to be violated <u>must be based in his race</u>. Indeed, the ADA is a *civil rights act* passed in 1990 addressing deprivations based on disability (which has nothing to do with race). In fact, two (2) of the three (3) cases relied upon by the Court were decided in 1966 and 1975, 24 and 15 years respectively, *before* the ADA was enacted as a civil rights law. The third case, a case which sought to enforce civil rights of race in employment, quotes the two cases decided before ADA civil rights was enacted. Even the preamble to the ADA provides that it is a civil right statute. Accordingly, 28 U.S.C. §1443 is not limited to race. It concerns a set of civil rights. The ADA is a civil rights act. As a result, Father asserts an original federal question for this Honorable Court's consideration. As a result, this Honorable Court must **REINSTATE** the Removal.

**III.   Federal counter-claims are permissible when the civil rights at issue within the removal cannot be addressed within the confines of the state court proceeding.**

Finally, not only are federal claims of deprivation of civil rights federal questions over which this Honorable Court has jurisdiction, but also, federal counter-claims are permissible where claims of civil rights deprivations cannot be addressed in state court. *See Conrad v. Robinson*, 871 F.2d 612 (6th Cir. Ct. App. 1989); *and see* 42 U.S.C. §12101(a)(3), (4), (5), (7), and (9). Here, Father has no ability to bring his ADA civil rights concerns with respect to Title II and accommodations for public services from State entities or agencies receiving Federal

Page **5** of **10**

Case 1:14-cv-00153-CLC-SKL   Document 29   Filed 08/07/14   Page 5 of 10   PageID #: 657

monies. "Title II stipulates that "the remedies, procedures, and rights set forth in [§ 505 of the Rehabilitation Act, 29 U.S.C. § 794a,] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." § 203, 42 U.S.C. § 12133. Section 505 of the Rehabilitation Act, in turn, adopts "the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964." 29 U.S.C. § 794a(a)(2). In short, the remedies, procedures, and rights available under Title II of the ADA parallel those available under Title VI of the Civil Rights Act of 1964." *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 981 (6th Cir. Ct. App. 2004).

Additionally, "[t]he [Sixth Circuit] Court has recognized that § 202 of Title II, 42 U.S.C. §12132, is enforceable through a private cause of action. *Barnes v. Gorman*, 536 U.S. 181, 184-85, 153 L. Ed. 2d 230, 122 S. Ct. 2097 (2002); *see also Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 8 (1st Cir. 2000) ("Although Title II does not expressly authorize a private cause of action, it adopts the remedial scheme of Title VI of the Civil Rights Act of 1964, under which there is an implied private cause of action."). This private right of action exists under § 203 of Title II, 42 U.S.C. § 12133, and derives from the fact that § 203 ultimately adopts the remedies, procedures, and rights set forth in Title VI, which, as noted, is itself enforceable through a private cause of action. *Barnes*, 536 U.S. at 185. Plaintiffs' claims are based upon defendants' failure to meet the requirements of 28 C.F.R. § 35.151, which was promulgated pursuant to 42 U.S.C. § 12134 to effectuate § 202. *See* 28 C.F.R. § 35.101. Whether 28 C.F.R. § 35.151 is enforceable through Title II's private cause of action, then, depends on whether the regulation effectuates a mandate of § 202. If the architectural requirements imposed on public entities by § 35.151 effectuate a mandate of § 202, then the regulation is enforceable through the private cause of action available under Title II. On the other hand, if the regulation's architectural requirements impose unique obligations on public entities not contemplated by § 202, then the regulation is not enforceable through Title II's private cause of action. ***We find that 28 C.F.R. § 35.151 effectuates a mandate of Title II and is therefore enforceable through the private cause of action available under the statute. Title II does more than prohibit public entities from intentionally discriminating against disabled individuals. It also requires that public entities make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide***." *Id. at* 907.[2]

Father's claims, here properly removed, allege that DCS has in fact violated the regulatory mandate of 28 C.F.R. §35.130 because the section prohibits agencies like DCS from discriminating since:

---

[2] Also, Father's claims are effectuated by 28 C.F.R. §35.130 which ***mandates that no party shall be discriminated against and thereby denied access to services***.

**(a)**  No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.
   **(b) (1)**  A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability --
       **(i)**  Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;
       **(ii)**  Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
       **(iii)**  Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;
       **(iv)**  Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others;
       **(v)**  Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;
       **(vi)**  Deny a qualified individual with a disability the opportunity to participate as a member of planning or advisory boards;
       **(vii)**  Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.
   **(2)**  A public entity may not deny a qualified individual with a disability the opportunity to participate in services, programs, or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities.
   **(3)**  A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:
           **(i)**  That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;
           **(ii)**  That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or
           **(iii)**  That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.

Father simply cannot assert any of his Title II claims of violation of these regulations by DCS in any other forum.

Specifically, Tennessee has no equivalent Title II accommodations in public services in the Tennessee version of the ADA. *Cf.* T.C.A. §4-21-101 *et seq.* (*particularly* T.C.A. §4-21-501) and 42 U.S.C. §12135 – 12165. As a result, Father cannot bring his ADA civil rights

Page **7** of **10**

Case 1:14-cv-00153-CLC-SKL   Document 29   Filed 08/07/14   Page 7 of 10   PageID #: 659

claims before the State tribunal as asserted in this Honorable Court's Order.[3] Moreover, in termination hearings before Tennessee juvenile courts, "[t]he State has the burden of proving by clear and convincing evidence that its efforts at reunification were reasonable. *In re C.M.M.*, 2004 Tenn. App. LEXIS 160, [WL] at *8. This requires the State to present evidence on the DCS reunification efforts "to enable the trier-of-fact to conclude, without any serious or substantial doubt, that the Department's remedial efforts were reasonable under all the circumstances." *Id*. This burden is different from and lower than, the burden of state agency responsibility under Title II of the ADA. The agency's burden under Title II of the ADA is to demonstrate that it applied its policies and procedures equally and without discriminatory impact.

The mechanism through which Father brings his ADA civil rights by way of removal is appropriate. *See Conrad v. Robinson*, 871 F.2d 612 (6th Cir. Ct. App. 1989). Father, just as the plaintiff in *Conrad*, brings counter-claims to address DCS' conduct in violation of the law. Father's Title II civil rights counter-claims are those which this Honorable Court is the only convening authority authorized to hear. In *Conrad*, the union engaged in conduct which amounted to retaliation against the plaintiff and no court but the Federal District Court could address that issue. Similarly, here, DCS engages in conduct which discriminates against Father by failing to afford accommodations with respect to the provision of public services to address his mental disability under Title II of the ADA and only this Honorable Court can address that issue.

Consequently, it is precisely because Title II concerns under the ADA are civil rights claims, and cannot be brought before the Hamilton County Juvenile Court, are indeed federal questions. As such, pursuant to 28 U.S.C. §1443(1), this Honorable Court has original

---

[3] Additionally, the Hamilton County Juvenile Court is charged only with jurisdiction over delinquent acts committed by juveniles, dependency and neglect issues, among others. T.C.A. §37-1-103 and 104. Title II of the ADA and discrimination claims based upon that title are not included in the court's jurisdiction. As such, Hamilton County Juvenile Court is not authorized by law to address discriminatory conduct in violation of Title II of the ADA with respect to the provision of public services and accommodation with respect to programmatic access. Only this Honorable Court is so vested with jurisdiction.

jurisdiction over ADA civil rights claims even those asserted by counter-claim. *Conrad v. Robinson*, 871 F.2d 612 (6th Cir. Ct. App. 1989). Accordingly, this Honorable Court must **REINSTATE** the Removal.

**WHEREFORE, BASED ON THE FOREGOING** Father seeks an Order **REINSTATING** the Removal to address the federal question issues presented under 28 U.S.C. §1443 through Title II of the ADA with respect to the discriminatory conduct of the State of Tennessee acting through the Department of Children's Services by denying Father's civil rights to access to programmatic services.

**RESPECTFULLY SUBMITTED:**

**BOWE & ASSOCIATES, PLLC**


By:*/s/Curtis L. Bowe, III*
Curtis L. Bowe, III (BPR 017037)
*Attorneys for Shaun Winesburgh*
707 Georgia Avenue, Suite 200
Chattanooga, Tennessee 37402
Telephone: (423) 475-6070
Facsimile: (423) 475-6072

Page **9** of **10**

Case 1:14-cv-00153-CLC-SKL   Document 29   Filed 08/07/14   Page 9 of 10   PageID #: 661

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded via the Court's ECF to:

Martha A. Campbell, Esq.
Jason I. Coleman, Esq.
Deputy Attorney General
General Civil Division
Cordell Hull Building, Second Floor
P. O. Box 20207
Nashville, Tennessee 37202

Greta Locklear, Esq.
P. O. Box 4548
Chattanooga, Tennessee 37405

On this, the 7th day of August, 2014.    By: */s/ Curtis L. Bowe, III*
                                              Curtis L. Bowe, III