UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES, | ) ) ) |
| Petitioner/Counter-Defendant | ) ) ) |
| v. | ) No. 1:14-CV-153 ) |
| LAURA WALLACE TRIPPE, JESSE TRIPPE, | ) ) Judge Curtis Collier |
| Respondents, | ) ) |
| v. | ) ) |
| SHAUN LEE WINESBURGH, | ) ) |
| Respondent/Counter-Plaintiff. | ) |

**RESPONSE IN OPPOSITION TO MOTION TO RECONSIDER**

I.   INTRODUCTION

The State of Tennessee Department of Children's Services (the "Department") filed a Petition to Terminate Parental Rights ("TPR") against Respondent/Counter-Plaintiff Shaun Lee Winesburgh ("Winesburgh") and Respondents Laura Wallace Trippe and Jesse Trippe (collectively, the "Respondents") in the Juvenile Court of Hamilton County at Chattanooga, Tennessee ("Juvenile Court"), on April 16, 2014. (ECF No. 10-1 at 1.) Winesburgh removed this matter on May 16, 2014, (ECF No. 1), and the Department filed an emergency motion for remand on May 29, 2014, (ECF No. 8). After the parties fully briefed the arguments, this Court granted the Department's motion on July 29, 2014. (ECF No. 27) (the "Order"). On August 7, Winesburgh filed a Motion to Reconsider. (ECF No. 28.) Because this Court correctly found that it lacks subject matter jurisdiction over the underlying TPR, it should deny Winesburgh's motion. Furthermore,

1

in light of public policy considerations of establishing permanency for children and in light of the other delays in this matter, the Department respectfully requests that the Court deny this motion without delay.

## II. ARGUMENT

The Court properly found that Respondents did not meet the requirements for removal under the well-pleaded complaint rule or 28 U.S.C. § 1443(1) ("Section 1443(1)"). (Order 3-5.) While an order remanding a case to a state court is generally unreviewable, cases removed pursuant to Section 1443 are "reviewable by appeal or otherwise." 28 U.S.C. § 1447(d). Winesburgh's motion essentially contains two grounds as a basis for the Court to reverse its order.[1] First, Winesburgh argues that Respondent Jesse Trippe is not the legal father and, therefore, his consent to remove the case was unnecessary. (ECF No. 28 at 1.) Second, Winesburgh argues that removal is proper under Section 1443(1). (*Id.* at 2.) As the Court noted, the Department did not argue that the lack of Jesse Trippe's consent as a ground for remand. (Order 2 n.1.) While the Department agrees with the Court's conclusion, it is not necessary to rely on this basis for remand as the requirements of Section 1443(1) have not been met.

### A. Removal is Improper Because Respondents Have Not Been Discriminated Against on the Basis of Race.

To take advantage of Section 1443(1), a defendant must meet a two-step test. *Conrad v. Robinson*, 871 F.2d 612, 614 (6th Cir. 1989). As the Court pointed out, the first prong requires that Respondents identify a right denied to them derived from a federal law providing for "specific civil rights stated in terms of racial equality." *Id.* at 614-15 (citing *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975). However, they "only discuss anti-discrimination laws with respect to their alleged

---

[1] Winesburgh has, at least in this motion, apparently abandoned the myriad other grounds he previously asserted.

2

disabilities." (Order 5.) In response, Winesburgh asserts that (1) the Americans with Disabilities Act ("ADA") is a civil rights law; (2) Section 1443(1) does not limit its effect to civil rights relating to race; and (3) the cases cited by the Court were decided before the ADA was enacted. (ECF No. 29 at 5.)

While Winesburgh correctly notes that a defendant "who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States" may remove a case to federal court, 28 U.S.C. § 1443(1), he is expressing a fallacy of equivocation regarding the phrase "any law providing for the equal rights of citizens of the United States." *See Richmond v. Dow*, 712 So.2d 149, 155 n.6 (La. Ct. App. 1998) (Byrnes, J., concurring) ("The fallacy of equivocation is the logical fallacy that occurs when we use the same term more than once in the same context, but with slightly shifting senses of meaning without recognizing that the meaning has changed."); *see also Gonzalez v. Liberty Mut. Fire Ins. Co.*, 981 F. Supp. 2d 1219, 1220-1225 (M.D. Fla. 2013) (general discussion of the fallacy and its application); *In re Guardianship of Vavra*, 365 S.W3d 476, 482 (Tex. App. 2012) ("Further, it does not logically follow that Evelyn had the capacity to manage her property as a reasonably prudent person because she had the capacity to execute a power of attorney. The inference drawn by appellees would appear to be a logical fallacy of equivocation, i.e., the term 'capacity' has a different meaning in different contexts."). Winesburgh has essentially constructed his syllogistic argument as follows:

- Major premise: Any defendant "who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States" may remove her case to federal court, 28 U.S.C. § 1443(1);

3

- Minor premise: The ADA is a "law providing for the equal civil rights of citizens of the United States";
- Conclusion: Therefore, a defendant who alleges her ADA rights were violated may remove her case to federal court (assuming that she is denied or cannot enforce those rights in state court) pursuant to Section 1443(1).

The fallacy is that Section 1443(1) applies to any civil rights law.[2] On the contrary, Section 1443(1) does not apply to any law Congress labels a "civil rights law" but is instead limited to laws relating to racial equality. *Georgia v. Rachel*, 384 U.S. 780, 792 (1966); *see Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 622 n.41 (1979) (noting that, in contrast to Section 1443, original jurisdiction under 28 U.S.C. §§ 1343(3)-(4) is not limited to claims of racial equality). Winesburgh uses the broader and more colloquial meaning of "civil rights law" rather than the intended meaning in Section 1443(1). Thus, Winesburgh has committed the fallacy of equivocation, and the Court should reject his argument that the ADA is a "civil rights law" within the meaning of Section 1443(1).

Winesburgh next argues that Section 1443(1) does not require that a defendant allege violations of civil rights based on her race. (ECF No. 29 at 5.) While he is correct that the statute does not explicitly make this requirement, the Supreme Court conducted an extensive analysis in *Georgia v. Rachel* to explain why the requirement exists. First, Section 1443 "is a direct descendant of a provision enacted as part of the Civil Rights Act of 1866." *Rachel*, 384 U.S. at 686. The original removal statute, which was part of section 3 of the 1886 Civil Rights Act, did not include the phrase "any law providing for the equal civil rights" because it instead referred to a series of

---

[2] The Department assumes *arguendo* that "any law providing for the equal rights of citizens of the United States" is synonymous with "civil rights law."

4

rights specified in section 1 of the Act. *Id.* at 788-89. When Congress passed the Revised Statutes of 1874, the provisions of the 1866 Civil Rights Act were placed in different sections, requiring the inclusion of the phrase "any law providing for the equal civil rights." *Id.* at 789. Although Congress's purpose was not to limit removal jurisdiction to statutory rights as they existed in 1874, Congress did intend the "phrase only to include laws comparable in nature to the Civil Rights Act of 1866." *Id.* at 789-90. In fact, "[p]rior to the 1874 revision, Congress had not significantly enlarged the opportunity for removal available to private persons beyond the relatively narrow category of rights specified in the 1866 [Civil Rights] Act, even though the Fourteenth and Fifteenth Amendments had been adopted and Congress had broadly implemented them in other major civil rights legislation." *Id.* at 790. Moreover, there was a cross-reference in the removal section of the Revised Statutes to the section that carried forward the old section 1 of the 1866 Civil Rights Act. *Id.* Finally, the legislative history of the 1866 Civil Rights Act revealed that the phrase "as enjoyed by white citizens" was added to section 1 "to emphasize the racial character of the rights being protected." *Id.* at 791. Thus, Section 1443(1) clearly only applies to civil rights laws relating to racial equality.

Winesburgh further contends that "two (2) of the three (3) cases relied upon by the Court were decided in 1966 and 1975, 24 and 15 years respectively, before the ADA was enacted as a civil rights law. The third case, a case which sought to enforce civil rights of race in employment, quotes the two cases decided before [the] ADA civil rights [law] was enacted." (ECF No. 29 at 5.) Implicit in his argument is that the Supreme Court could not have predicted that civil rights laws other than those relating to racial equality would be passed. Such an assumption is unwarranted, however. The Equal Pay Act was passed in 1963; the Civil Rights Act of 1964 included prohibitions against discrimination on the basis of sex, religion, and national origin; and the

5

Rehabilitation Act – on which Winesburgh rests some of his counterclaims – was passed in 1973. The former two laws were in place before both *Georgia v. Rachel* and *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808 (1966), while the last was in force before *Johnson v. Mississippi*. In addition, Congress had passed other legislation focused on civil rights in the Nineteenth Century without expanding removal jurisdiction. *Rachel*, 384 U.S. at 790.

### B. Removal is Improper Because Respondents May Bring Their Claims in State Court.

Under the second prong of the 1443(1) test, defendants "must be unable to or denied the opportunity to enforce these specified federal rights in the courts of the state in question." *Conrad*, 871 F.2d at 615 (citing *Johnson*, 421 U.S. at 219). In fact, "'[u[nder § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.'" *Id.* (quoting *Peacock*, 384 U.S. at 828). The Court properly found that Respondents could bring their counterclaims in a separate action in Tennessee state court. (Order 5.) Indeed, the default rule is that state courts have concurrent jurisdiction over federal claims. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990); *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 474, 477-78 (1981).

Despite the clear law on the subject, Winesburgh continues to assert lack of state court jurisdiction. In support of his position, Winesburgh contends that "Tennessee has no equivalent Title II accommodations in public services in the Tennessee version of the ADA." (ECF No. 29 at 7.) This assertion merely conflates the lack of a state cause of action with the Tennessee state courts lacking subject matter jurisdiction for federal causes of action. The lack of a state law equivalent to Title II does not negate concurrent jurisdiction. *See Tafflin*, 493 U.S. at 458; *Gulf Offshore Co.*; 453 U.S. at 477-78. Moreover, the ADA abrogates a State's sovereign immunity and

6

authorizes suits against the State in its own courts. 42 U.S.C. § 12202. Congress may do so pursuant to the enforcement power of Section 5 of the 14th Amendment, *Alden v. Maine*, 527 U.S. 706, 756 (1999) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)), and Title II of the ADA is a valid exercise of Congress's enforcement power, *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004); *see United States v. Georgia*, 546 U.S. 151, 159 (2006) ("Thus, insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."). Indeed, many States have recognized that the ADA authorizes private parties to sue a State in its own courts. *E.g., Mercer v. Champion*, 55 A.3d 772, 779-80 (Conn. App. Ct. 2012); *Carlson v. State*, 932 N.Y.S. 812, 817 (N.Y. Ct. Cl. 2011); *Dohmen v. Iowa Dep't for the Blind*, 794 N.W. 2d 295, 309 (Iowa Ct. App. 2010); *Doe v. Bd. of Regents of Univ. of Nebraska*, 788 N.W.2d 264, 290 (Neb. 2010); *Mercer v. Strange*, 899 A.2d 683, 690 (Conn. App. Ct. 2006). Even though the Juvenile Court does not have jurisdiction to hear Winesburgh's counterclaims, "he has not demonstrated that these claims could not be brought in a separate action." (Order 5.)

Winesburgh also states that his situation is similar to the one at issue in *Conrad* in that "no court but the [f]ederal [d]istrict [c]ourt could address" his claims. (ECF No. 29 at 8.) While he is correct that the Sixth Circuit denied remand in *Conrad*, the court only considered the first prong of the Section 1443(1) test and simply noted in a conclusory statement that Ohio state courts could not hear Title VII cases. 871 F.2d at 616. Indeed, in 1989, the law in Ohio was that its state courts lacked subject matter jurisdiction in Title VII cases. *Fox v. Eaton Corp*, 615 F.2d 716, 717 (6th Cir. 1980) (citing *Fox v. Eaton Corp*, 358 N.E. 2d 536, 537-38 (Ohio 1976), *overruled by Manning v. Ohio State Library Bd.*, 577 N.E. 2d 650, 653 (Ohio 1991)). However, the United States Supreme Court explicitly found that state courts have concurrent jurisdiction over Title VII claims. *Yellow*

7

*Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990). Were *Conrad* decided today, the Sixth Circuit would have realized that the Ohio courts did, in fact, have subject matter jurisdiction. *See id.* As a result, it seems likely that the case would have been remanded to state court.

Winesburgh further asserts that the burden of proof on the Department in a termination of parental rights "is different from and lower than[] the burden of state agency responsibility under Title II of the ADA." (ECF No. 29 at 8.) Apparently, his argument is that the counterclaims must be heard with the TPR because the counterclaims increase the Department's burden. This consideration is irrelevant for the purpose of determining whether removal is proper under federal law, as it is outside the scope of the two-step test under Section 1443(1). *See Conrad*, 871 F.2d at 614-15. It is also inaccurate. The burden of proof for the Department in a termination proceeding is clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 768 (1982); *In re Drinnon*, 776 S.W. 2d 96, 97 (Tenn. Ct. App. 1988). Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *In re Valentine*, 79 S.W. 3d 539, 546 (Tenn. 2002). "It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established." *O'Daniel v. Messier*, 905 S.W. 2d 182, 188 (Tenn. Ct. App. 1995). Conversely, in ADA cases, the burden of proof is on the *plaintiff*. Specifically, "[t]o recover compensatory damages under Title II of the ADA, a plaintiff must show [by a preponderance of the evidence]: '(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability.'" *Sears v. Bradley County Gov't*, 821 F. Supp. 2d 987, 990 (E.D. Tenn. 2011) (Collier, J.) (quoting *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003)). Thus, the Department's burden is actually *higher* in a termination proceeding that it would be in a stand-alone lawsuit.

Finally, Winesburgh asserts that he "merely seeks a determination as to whether the State of Tennessee must avoid discriminating against the disabled during and throughout the removal process, reunification process, and[,] potentially, the termination of parent rights process" and that he does not want the termination issues adjudicated by the Court. (ECF No. 29 at 2.) This contention is belied by his pleadings, as his seven counterclaims each only ask for money damages, not injunctive or any other kind of relief. (Answer and Counterclaim, ECF No. 2, ¶¶ 76, 88, 106, 119, 131, 143, 155.) If Winesburgh were merely seeking a "determination" by the Court, he would have filed a separate action for a declaratory judgment pursuant to 28 U.S.C. § 2201 rather than these counterclaims. Indeed, by removing the case instead of filing a separate suit, he is *precisely* asking for the Court to adjudicate the termination issues.

## III.   CONCLUSION

The Court should uphold its Order and deny Winesburgh's Motion to Reconsider. Respondents cannot meet the requirements of 28 U.S.C. § 1443(1), as they have not claimed discrimination on the basis of race and Winesburgh could bring his counterclaims in Tennessee state court. Therefore, this Court lacks subject matter jurisdiction. Accordingly, the Department requests that this Court should deny Winesburgh's motion as quickly as possible.

    Respectfully submitted,

    ROBERT E. COOPER, JR.
    Attorney General and Reporter

    s/Jason I. Coleman
    JASON I. COLEMAN, # 031434
    Assistant Attorney General
    General Civil Division
    Cordell Hull Building, Second Floor
    P.O. Box 20207
    Nashville, Tennessee 37202

(615) 741-7908  
jason.coleman@ag.tn.gov

MARTHA A. CAMPBELL, # 14022  
Deputy Attorney General  
General Civil Division  
Cordell Hull Building, Second Floor  
P.O. Box 20207  
Nashville, Tennessee 37202  
(615) 741-6420  
martha.campbell@ag.tn.gov

10